IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| STORM PRODUCTS, INC., a Utah corporation<br><br>Plaintiff,<br><br>vs.<br><br>EBONITE INTERNATIONAL, INC., a Kentucky corporation, and EBONITE HOLDINGS, INC., a Kentucky corporation,<br><br>Defendants. | MEMORANDUM DECISION<br>& ORDER<br><br>Case No.  2:07-cv-260-CW<br><br>Judge Clark Waddoups |

This matter is before the court on Plaintiff Storm Products, Inc.'s Motion for Summary Judgment of Invalidity for Indefiniteness.  (Dkt. No. 34.)  In short, Storm asks the court to find that U.S. Patent 6,280,343 (the "'343 patent") is invalid because it is indefinite.  For the reasons discussed below, the court holds that the '343 patent is incapable of construction and accordingly GRANTS Storm's motion.

## BACKGROUND

A market exists for the sale of bowling balls to professional and amateur bowlers, many of whom compete in bowling leagues.  Storm and Ebonite are both involved in this market and both market, demonstrate and sell bowling balls to bowlers.  The '343 patent, which is assigned to Ebonite, relates to methods for adapting custom bowling balls for testing by bowlers.  According to the '343 patent's background and summary, before purchasing a new bowling ball,

bowlers often want to test it out.  Usually, a bowling ball is shipped from the factory with a pair of finger holes pre-drilled at standard spots on the ball, but the thumb hole is left to be drilled later.  Since bowlers' hand grips vary in size, sellers typically drill the ball's thumb hole to fit the size of the testing customer's grip on an individual basis.  If the seller drills a thumb hole to customize a ball for a prospective purchaser who decides not to purchase the ball, then the seller is left with a bowling ball that cannot be custom-drilled for another customer.  Ebonite asserts that such balls cannot then be sold as new.  This potential for waste is compounded by the fact that Storm and Ebonite apparently introduce new balls with some frequency in an effort to offer balls with improved performance.  Accordingly, one stated object of the '343 patent is to reduce waste by providing a "method for drilling a small number of bowling balls for testing by a relatively large number of bowlers having hand spans of different sizes." ('343 patent at col. 1, ll. 32-35.)  Ebonite asserts that it has successfully used this approach for several years.

Ebonite directly competes with Storm.  For purposes of this motion, the court will accept as true that, as part of its marketing activities, Storm hosts product showcases at bowling alleys where participants are encouraged to test and purchase bowling balls manufactured by Storm.[1]  In February 2007, Ebonite sent Storm a letter alleging that Storm's showcases might infringe claim 1 of the '343 patent.  After a further exchange of letters, Ebonite sent Storm a letter asserting that Storm was willfully infringing the '343 patent.

---

[1] Nothing in the patent claim itself would seem to limit the scope of the patent to this application, but that fact would make no difference in the court's finding as to the indefiniteness of the relevant language.

2

On April 20, 2007, Storm brought an action for a declaratory judgment that the '343 patent is invalid and not infringed by Storm, either directly or indirectly as an inducing or contributing infringer. Ebonite filed a counterclaim against Storm, alleging that Storm has willfully infringed claim 1 of the '343 patent.

The '343 patent contains five total claims. Claim 1 is an independent claim; the remaining four claims depend from claim 1. The preamble of claim 1 reads: "A method for adapting a relatively small number of bowling balls for use in testing by a large number of bowlers having different hand sizes, said method including the steps of: . . ." ('343 patent, col. 4, ll. 6-9). Ebonite concedes that the phrases "relatively small number of bowling balls" and "large number of bowlers" in claim 1's preamble are needed to breathe life into the claim. See Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999) ("If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim.") (citations omitted). Accordingly, the parties do not dispute that the terms "relatively small number of bowling balls" and "large number of bowlers," are limitations on all asserted claims of the '343 patent, including claim 1.

Among other disputed terms, Storm and Ebonite have submitted the terms "a relatively small number of bowling balls" and "a large number of bowlers" to the court for claim construction. Ebonite argues that the terms can be construed. Storm counters that they cannot. Concurrent with its Markman brief on the '343 patent, Storm moved for a summary judgment

3

invalidating all of the '343 patent's claims, arguing that the terms "a relatively small number of bowling balls" and "a relatively large number of bowlers" are indefinite under 35 U.S.C. § 112, ¶ 2 and are incapable of being construed.

Both the <u>Markman</u> issues and Storm's motion for summary judgment have been fully briefed and argued to the court.  Moreover, the parties have provided the court with the '343 patent, the patent's prosecution history as well as affidavits by experts supporting their positions. The court has reviewed the briefing and heard argument on claim construction and summary judgment.  Accordingly, both claim construction and summary judgment are now before the court.[2]

## ANALYSIS

**I.     Legal Standards**

**A.     Summary Judgment**

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  <u>Faustin v. City & County of Denver, Colo.</u>, 423 F.3d 1192, 1198 (10th Cir. 2005) (citations and internal quotation marks omitted).  <u>See</u> <u>also</u> Fed R. Civ. P. 56(c).  "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented."  <u>Chasteen v. UNISIA JECS Corp.</u>, 216 F.3d 1212, 1216 (10th Cir. 2000).  "Only disputes over facts that

---

[2] Because the court has concluded that the '343 patent is incapable of construction it does not reach the issues raised in the <u>Markman</u> briefing.

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B.    Claim Construction Principles

35 U.S.C. § 112, ¶ 2 requires that a patent's specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir.2005) (quoting Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Because claims delineate the patentee's right to exclude:

> the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent.  Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims.

Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed. Cir. 1996) ("[T]he primary purpose of the requirement is 'to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their [respective] rights.'") (citation omitted).  See also United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236 (1942) (to meet the "particularity and distinctness" requirement, a claim must "clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise").

In claim construction, courts begin with the patent's intrinsic evidence.  See Phillips, 415 F.3d at 1314-15; C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 861 (Fed. Cir. 2004).  Intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  See Phillips, 415 F.3d at 1314; C.R. Bard, Inc., 388 F.3d at 861.  Courts give claim terms their "ordinary and customary meaning" as understood by one of ordinary skill in the art at the time of the invention in the context of the patent.  Phillips, 415 F.3d at 1312-13 (citation omitted); Alloc, Inc. v. International Trade Comm'n, 342 F.3d 1361, 1368 (Fed. Cir. 2003).  "[C]laims 'must be read in view of the specification, of which they are a part.'"  Phillips, 415 F.3d at 1315 (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir.1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  Phillips, 415 F.3d at 1315 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir.1996)); Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002).

"Consistent with this general principal . . . the specification may reveal a special definition that differs from the meaning it would otherwise possess."  Phillips, 415 F.3d at 1316.  In these situations, the "inventor's lexicography governs."  Id.  "In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor."  Id.  Moreover, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  Teleflex, Inc., 299 F.3d at 1325.  On the other hand, "'particular embodiments and examples appearing in the specification will not generally be read

into the claims.'" <u>Comark Commc'ns, Inc. v. Harris Corp.</u>, 156 F.3d 1182, 1187 (Fed. Cir.1998) (quoting <u>Constant v. Advanced Micro-Devices, Inc.</u>, 848 F.2d 1560, 1571 (Fed. Cir.1988)).  <u>See also</u> <u>Phillips</u>, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction. For example, a patent applicant may define a term in prosecuting the patent.  <u>See</u> <u>Home Diagnostics, Inc., v. LifeScan, Inc.</u>, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

In addition to these types of intrinsic evidence, a court construing patent claims also reviews extrinsic evidence, such as dictionaries and expert testimony.  Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" <u>Phillips</u>, 415 F.3d at 1317 (quoting <u>C.R. Bard, Inc.</u>, 388 F.3d at 862).  Accordingly, while expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, an expert's "conclusory, unsupported assertions" as to a term's definition is entirely unhelpful to a court.  <u>Phillips</u>, 415 F.3d at 1317.

**C.     Determining Whether a Patent is Indefinite**

"A patent shall be presumed valid."  35 U.S.C. § 282.  Accordingly, a court should hold a claim indefinite only after reasonable efforts at construction prove futile.  <u>Exxon Research and Engineering Co. v. United States</u>, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  "Of course, claims are not indefinite merely because they present a difficult task of claim construction."  <u>Halliburton Energy Servs., Inc. v. M-I LLC</u>, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  <u>See also</u> <u>Bancorp Servs.</u>

7

LLC v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004).  To the contrary, courts should find a claim definite "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree."  Exxon Research, 265 F.3d at 1375.

"Only claims not amenable to construction or insolubly ambiguous are indefinite" and thus invalid.  Datamize LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted).  For example, in Honeywell Int'l, Inc. v. International Trade Comm'n, 341 F.3d 1332, 1340 (Fed. Cir. 2003), the court held that a claim was indefinite because the claim had a numeric limitation but did not disclose which of multiple methods of measuring that number should be used.  In Datamize, the court held that a claim was invalid because it contained a term ("aesthetically pleasing") that was "completely dependent on a person's subjective opinion."  417 F.3d at 1350.

A party must show invalidity for indefiniteness by clear and convincing evidence.
Datamize, 417 F.3d at 1348.

> Proof of indefiniteness requires such an exacting standard because claim construction often poses a difficult task over which "expert witnesses, trial courts, and even the judges of this court may disagree."  Nevertheless, this standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area.

Halliburton, 514 F.3d at 1249-50 (citation omitted).  Close questions of indefiniteness "are properly resolved in favor of the patentee."  Bancorp, 359 F.3d at 1371.  See also Exxon Research, 265 F.3d at 1380.

8

II.     **The Terms at Issue in Claim 1 of the '343 Patent are Indefinite**

Storm contends that the terms "large number of bowlers" and "relatively small number of balls" in claim 1 of the '343 patent are indefinite and cannot be construed.  The court agrees. These phrases include relative terminology in terms of degree.  When a claim uses words of degree, "the district court must determine whether the patent's specification provides some standard for measuring that degree."  Seattle Box Co., Inc. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 826 (Fed. Cir. 1984).  See also Ex parte Oetiker, 1991 WL 354859, 23 U.S.P.Q.2d 1641, 1644 (Bd. Pat. App. & Inter. 1992).  Here, the court has examined the specification, prosecution history, and extrinsic evidence concerning the '343 patent and has not found any standard for measuring what one skilled in the art would determine to be a "large number of bowlers" or a "relatively small number of balls."

With no guidance as to what the term "large number of bowlers" means, it could potentially be any number of bowlers over one.  For example, one skilled in the art of providing bowling balls for testing by potential customers might consider ten bowlers to be "a large number of bowlers" in some circumstances or one hundred bowlers as "large" in others.  But it is equally plausible that one skilled in the art might consider ten or one hundred bowlers to be a small number of bowlers in other contexts.  For example, a bowling lane in a small town that sells balls and that holds a "product showcase" might view one hundred bowlers, or even ten bowlers, as a "large" turnout.  Meanwhile, a lane in a large city holding such an event may consider one hundred or fewer bowlers as a disappointingly small turnout.  Nothing in the intrinsic evidence of the '343 patent or in the extrinsic evidence offered by Ebonite provides sufficient support for how

9

one skilled in the art would be able to determine what the circumstances are to allow an objective

conclusion of what number of bowlers would fall within or outside the boundary of the patent,

which is described only as a "large number."

Neither party expressly offered any method for determining the amount of bowlers that

count as "large" under the '343 patent.  The court can envision several.  For example, "large"

could have been tied to product showcases, where a bowling ball seller holds a day-long event at a

bowling lane open to the public to test balls.  Likewise, a "large number of bowlers" could mean

all of the bowlers a certain seller expects will test balls in a given time period, say, the amount of

time before a new model of bowling ball comes out from a bowling ball producer.  It could mean

all of a company's potential customers for an indefinite time period.

The fatal defect in the '343 patent is its failure to specify one of these methods– or any

other possible method– to calculate "large."  There is nothing in the evidence that definitively ties

a "large number of bowlers" to any anchor, such as a numeric threshold or a limited time and

space.  In other words, the court could not find any indication that there is any particular point at

which the number of bowlers becomes "large" for purposes of claim 1, other than perhaps any

number more than one bowler.  Indeed, there is nothing in the patent or the supporting evidence to

provide a baseline over which any number would be understood to be "large."

Because there is no way to know what a "large number of bowlers" is as used in claim 1,

there is no way to decide what a "relatively small number of balls" means.  Determining a

"relatively small" number requires a comparison with a "large number of bowlers."  Moreover,

even if there were a set number of bowlers with which to compare, there is nothing in the patent

or evidence that sets a limit on what "relatively small" means. Is "relatively small" a ratio? Is it a set number? There is simply no indication in this record of how one skilled in the art could make this determination.[3]

The Federal Circuit has found claims to be indefinite in a similar situation. In <u>Honeywell</u>, the court attempted to construe a patent covering the production process of polyester yarns used to make tires. 341 F.3d at 1334. The patent's claims required different steps in the process and at each step, a sample of the yarn was measured to determine its "melting point elevation" or "MPE." <u>Id.</u> at 1335. Among other things, once the sample yarn had reached an MPE within a certain range, the process was covered by the patent. <u>Id.</u> There were four known methods for determining a sample's MPE. <u>See id.</u> at 1336. The methods differed significantly and could result in "greatly" varied MPE calculations from the same sample. <u>Id.</u>

The alleged infringer in <u>Honeywell</u> argued that the patent was indefinite because it did not specify which method should be used to determine the sample's MPE. <u>Id.</u> at 1337. As a result, if a yarn producer used one method to calculate a sample's MPE, the MPE would be within the range covered by the patent, whereas using another method from the same sample would result in an MPE outside the patent's coverage. <u>Id.</u> The patent holder countered that the court should adopt a construction that preserved the patent's validity, arguing that the patent required using either one of the four methods or any of the methods for calculating MPE. <u>Id.</u> at 1339-40.

---

[3] Ebonite has rejected that the term "a relatively small number of balls" could be limited to the number of holes that can be drilled in the span between the finger holes and the furthest practical placement of the thumb hole. (<u>See</u> Ebonite's Responsive <u>Markman</u> Brief at 8, Dkt. No. 43.) The court similarly sees no indication that the patent limits "relatively small" to that number.

After considering the intrinsic evidence and an expert report provided by the patent holder, the <u>Honeywell</u> court concluded that the patent gave no way to determine which of the four methods was required to calculate MPE.  <u>Id.</u> at 1340.  The court went on to reason that "because the sample preparation method is critical to discerning whether [the yarn claimed in the patent] has been produced by the claimed process, knowing the proper sample preparation method is necessary to practice the invention."  <u>Id.</u>  Accordingly, the court held that the "claims are insolubly ambiguous, and hence indefinite, with respect to the sample preparation method."  <u>Id.</u>

The case that the terms are indefinite is clearer here than in <u>Honeywell</u>.  In <u>Honeywell</u>, there were four options known to those skilled in the art for measuring MPE.  Here, there is no method at all for deciding what a "large number of bowlers" or a "relatively small number of balls" might be.  With no clear guidance on the meaning of these terms, one of ordinary skill in the art has no way to determine the scope of claim 1.  This lack of any objective measure makes claim 1 and all of its dependent claims insolubly ambiguous, rendering the whole patent indefinite.  <u>See</u> <u>id.</u>

None of Ebonite's arguments to the contrary have merit.  First, Ebonite argues that any ambiguity in the terms "large number of bowlers" and "relatively small number of balls" is resolved by reading them in combination with each other.  That is, to figure out what is a "large number of bowlers," one skilled in the art would look to the number of balls.  Conversely, to determine what is a "relatively small number of balls," one skilled in the art would look at the number of bowlers.  The logical conclusion of this reasoning is that a "large number of bowlers"

means "any number of bowlers greater than one" and a "relatively small number of bowling balls" means "one fewer ball than the number of bowlers."

The court rejects this construction.  First, the court is unaware– whether in the everyday sense or in the bowling ball sales industry– of any ordinary or customary definition of the term "large" being used to mean "more than one" or of the term "relatively small" to mean "one fewer than."[4]  To the contrary, Ebonite's construction would lead to results that are not supported by the usual meaning of the terms "large" and "relatively small."  For example, under Ebonite's construction, 100 bowling balls would be a "relatively small" number of balls if there were 101 bowlers testing balls.  Meanwhile, two would be a "large number of bowlers" if there was only one ball present for testing by those bowlers.  And as used in common parlance, 100 is not relatively small compared to 101 and two is not a large number of people.  But these results would be mandated by Ebonite's proposed reading of claim 1.

Ebonite also argues that the ambiguity in the terms at issue is not insoluble because it can be cured by the doctrine of equivalents.  But the doctrine of equivalents would not allow Ebonite to stretch the meaning of "relatively small" and "large" to expand the scope of claim 1 in an infringement action.

> Under the doctrine of equivalents, an accused product that differs from the claim, and thus does not literally infringe, nonetheless infringes if its difference from that claim is insubstantial from the perspective of one of ordinary skill in the relevant art.  As we have often observed, however, the doctrine of equivalents is not a license to ignore or "erase . . .

---

[4] The dictionary definition of "large" that appears to be most applicable here is "dealing in great numbers or quantities."  Merriam-Webster's Collegiate Dictionary, Eleventh Ed.  This definition further illustrates the comparative nature of the term and its lack of meaning in providing clear and definite limitations or boundaries.

structural and functional limitations of the claim," limitations "on which the public is entitled to rely in avoiding infringement."

Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581-82 (Fed. Cir. 1996) (citations omitted).  Here, Ebonite's argument based on this doctrine fails because it seeks to eliminate the boundaries implied in the terms "relatively small" and "large" and replace them with the dissimilar terms "one fewer than" and "more than one."

The court has also considered whether the specification gives notice that the '343 patent's inventors meant to provide meanings of "large" and "relatively small" that differ from their normal meanings.  See Phillips, 415 F.3d at 1316.  After a thorough review of the specification, the court has found no indication that the inventors intended to create alternative definitions of those terms.  Ebonite's argument otherwise has no merit.  Ebonite points out the '343 patent is aimed at eliminating the practice of pre-drilling balls in a one-to-one manner.  Accordingly, it is fair to assume that the patent is directed at a number of bowlers greater than one and a number of balls fewer than the number of bowlers.  That fact alone, however, does not reasonably give anyone notice that the patent is redefining the everyday term "large" to mean "more than one" or that the patent is giving the equally common words "relatively small" the new meaning of "one fewer than."

Relatedly, Ebonite argues that under the '343 patent, all a seller needs to do to avoid infringing the patent is anticipate the number of bowlers who are expected to test balls and provide at least the same number of pre-drilled balls as the number of bowlers expected.  In support of this reading, Ebonite points out that "a patent applicant may use claim language that

requires a person to have foreknowledge of certain facts when practicing the invention."

Datamize, 417 F.3d at 1355-56.  But claim 1's problem is not the fact that a seller must know in

advance that a "large number of bowlers" are going to test balls.  Claim 1's problem is that it

provides no way of knowing what a "large number of bowlers" might be.  Claim 1 does not state,

for example, that ten or more bowlers would be a large number.  So a seller might know that there

will be multiple bowlers who want to test balls at a product showcase, but the seller has no way of

knowing at what point the amount of bowlers would be "large" as used in claim 1.  Further, even

if a seller were to conclude that a "large number" of bowlers as used in claim 1 was expected, the

seller has no way of know what number of balls would be "relatively small" in relation to that

number of bowlers.

Suppose, for example, that the seller expects 100 bowlers and provides ten pre-drilled

balls.  Is 10 "relatively small" as compared to 100?  What about as compared to 500 or 1,000?

The patent simply provides no answers.  Moreover, since nothing in the patent requires the balls

to be tested at a showcase, the "large number of bowlers" could test the ball over the period of a

year or some other indefinite time in an unlimited space.  In this context, accepting Ebonite's

argument that "relatively small" means one ball fewer than the number of bowlers would mean

that the limitation would preclude use of the method in every circumstance one could practically

imagine.  Consequently, the limits implied in "large" and "small" would in fact become no

limitations at all.  Absent any limitations, the court must conclude that the patent is not valid.

Another way of looking at Ebonite's arguments is that the court is required to adopt

Ebonite's proposed construction because doing so will render the '343 patent valid.  The Federal

Circuit rejected a similar argument in Honeywell.  As noted above, the patent holder there argued

that the court could construe the patent in a way that made it clear, such as by requiring one

method or all methods.  See Honeywell, 341 F.3d at 1340-41.  But the court noted that there was

nothing in the intrinsic or extrinsic evidence that indisputably supported either of those

interpretations.  See id. at 1341.  Accordingly, the court refused to "rewrite" the claims to require

using one or all methods.  Id.  As the court understands Honeywell, a patent should not be

construed in a way that is not supported by the evidence, even if doing so would render the patent

valid.  Put another way, "insolubly ambiguous" does not mean that there is no possible

construction that could cure a claim's ambiguity, it means that there is no such construction that is

supported by the evidence.  Here, as in Honeywell, the construction suggested by Ebonite is not

grounded in the evidence.  There is nothing in the intrinsic or extrinsic evidence that suggests that

"large" means "more than one" and "relatively small" means "one fewer than."

        Turning to the prosecution history of the '343 patent, the court finds it unhelpful as well.

Of the two terms at issue, the patent examiner only discussed the term a "relatively small number

of bowling balls."  Specifically, in the Statement of Reasons, the examiner noted that "[i]n the

instant invention, a limited number (say 10) test ball[s] could be kept on hand." (Notice of

Allowance, attached as Ex. 3 to Dkt. No. 36.)  But the examiner did not tie this comment to

anything in the patent specification or to any submission from the inventors.

        The Federal Circuit has recognized that an examiner's Statement of Reasons for

Allowance "will not necessarily limit a claim."  ACCO Brands, Inc. v. Micro Sec. Devices, Inc.,

346 F.3d 1075, 1079 (Fed. Cir. 2003).  Here, the examiner had no apparent basis for suggesting

that ten should be considered " relatively small number of balls."  Accordingly, the court does not

find that statement to be a proper ground to limit the term a "relatively small number of balls" to

ten.

Ebonite also argues that one skilled in the area of selling bowling balls would be able to

understand the terms "large number of bowlers" and "relatively small number of balls."  In

support, Ebonite offers a declaration by William T. Scheid, one of the inventors of the '343

patent.  But Mr. Scheid's declaration is not helpful.  Mr. Scheid offers testimony about the

industry, the problem he sought to solve with the patent and Ebonite's economic success in

practicing the patent.  He offers no direct testimony about how he or anyone else skilled in the art

would understand the terms at issue.  Accordingly, his testimony does not even rise to the level of

conclusory statements that the Federal Circuit warns against giving any credence.  <u>See</u>, <u>e.g.</u>,

<u>Phillips</u>, 415 F.3d at 1317.

Read in its most favorable light, Mr. Scheid's declaration could suggest that the terms

"large" and "small" are only applicable to product showcases.  That is, Mr. Scheid explains that

since 2000, Ebonite has used the '343 patent's method "at events that it has promoted as 'Ebonite

Demo Days' and 'Hammer Sneak Peaks'. . ."  (Dec. of Scheid, Dkt. No. 38.)  But there is nothing

in the '343 patent's intrinsic evidence that suggests that the number of bowlers should be tied to a

showcase.  And beyond Mr. Scheid's assertion that Ebonite has practiced the patent at product

showcases, there is no extrinsic evidence suggesting that one skilled in the art would limit the

definition of "a large number of bowlers," to the number of bowlers expected to test balls at an

organized event.  As mentioned above, the court can envision other scenarios in which one skilled

17

in the art may conclude that there was "a large number of bowlers," such as all potential

customers in a certain geographic region.  Moreover, the fact that Ebonite has purported to

practice the patent at showcases is not grounds for limiting the patent to events.  And Ebonite

does not seek to limit the claims to cover such events.

     As an alternative to invalidating the '343 patent, the court has considered narrowing the

scope of the terms.  See Halliburton, 514 F.3d at 1254 ("We note that where a claim is ambiguous

as to its scope we have adopted a narrowing construction when doing so would still serve the

notice function of the claims.")  In this case, however, Ebonite seeks to "resolve the ambiguity in

a way that gives it the broadest possible construction."  Id.  But "such a construction would

undermine the notice function of the claims because it would allow [a patent holder] to benefit

from the ambiguity, rather than requiring [a patent holder] to give proper notice of the scope of

the claims to competitors."  Id.  Further, this type of broad, unsupported interpretation risks

"retard[ing] innovation because cautious competitors may steer too far around that which [the

patent holder] actually invented, neglecting improvements that otherwise might be made."  Id.

## CONCLUSION

     For the foregoing reasons, the court concludes that Storm has shown by clear and

convincing evidence that claim 1 of the '343 patent is incapable of construction.  Because all of

the other claims depend from claim 1, the court holds that the '343 patent is invalid.  It is

therefore ORDERED that Storm's Motion for Summary Judgment of Invalidity for Indefiniteness

(Dkt. No. 34) is GRANTED.

DATED this 15th day of July, 2009.

BY THE COURT:

_____

CLARK WADDOUPS
United States District Judge